Letter No. 171113 United States v. Enrique Costas-Torres Mr. Reagan, good morning. Good morning, Your Honor. Good morning. I would like to reserve, Your Honor, if possible, five minutes for my rebuttal. Obey. Obey. Okay. Good morning, Your Honor. This case, briefly, is about a conviction of my client, Mr. Costas, who was found guilty on three charges under 1343 as for fraud against the United States. I would like to start with an excerpt of the government's brief stating that Agent de Jesus' testimony crossed into an area that should have been avoided. Agent de Jesus' testimony was over-impermissible, over-the-testimony that is forbidden by this Court under U.S. v. Costas. Is it the same situation here in this case? It is the same situation, Your Honor. He was not the first witness to begin with. So that, at least, is one distinction. Well, Agent de Jesus was the first witness in this case, Your Honor, to start. The government started its case, after it had already done its opening statement, with Agent de Jesus' testimony here. So that is problematic. It was an agent of the government that imprimated. We have never categorically excluded over-the-testimony. We found fault with over-the-testimony in some cases, but we haven't categorically excluded it. In fact, in ATM, we said specifically that over-the-testimony can be proper. It is, Your Honor. But in your challenge in the District Court, you didn't single out anything that was improper about this over-the-testimony. You simply argued the proposition that over-the-testimony is inadmissible. Well, Your Honor, with all due respect, it is impermissible in this case because the issue is that there was not enough evidence to convict, and that is one of the analogies. If there wasn't enough evidence to convict, then you've got a different issue on that. Then your Rule 29 motion should have been granted. Yes, Your Honor. But if you say over-the-testimony is impermissible in a particular case, you've got to point out what's wrong with that particular over-the-testimony. And I question whether you ever did that in the District Court. Yes, Your Honor, we did it. And we argued before the District Court when Agent de Jesus was talking that Mr. Costas was part of a fraudulent scheme to fraud the government when the Agent de Jesus did not have that information before him. He was giving a lay opinion to the jury as to that matter. And that was the problem with Agent de Jesus' testimony back then. He gave information that he had performed investigations and that he had linked Mr. Costas with 12 fraudulent recruitments when Agent de Jesus never had personal knowledge as to that. That is the problem. And that compounded with a lack of evidence. Because when the evidence is overwhelming, Your Honor, over-the-testimony, it may pass. But in here, it can't. So you're only attacking that particular line of the testimony and not all of his testimony? Well, Your Honor, that's the part that we're attacking. Yes, okay. So before the District Court, did you preserve that specific objection? Yes, Your Honor. Before the District Court, the counsel at that time specifically stated that it was an impermissible over-the-testimony against U.S. versus Casas. And then did you specifically say that when de Jesus said Costas was involved in a fraudulent scheme with 12 individuals, was there an objection that this was beyond, it was A, beyond the personal knowledge, and B, was an impermissible lay opinion? Not only that, Your Honor, the other part that the... Yes or no? Yes, Your Honor. And not only that, Your Honor, into that part, I believe counsel at that time also argued that the agent de Jesus was using the words fraud, investigation, and specifically pinpointing Mr. Costas into that scheme when he had no knowledge as to that. Because this is a historic investigation that the events happened from 2006, 2008. Wasn't most of this testimony covered by witnesses that followed de Jesus? Yeah. Excuse me, Your Honor, could you repeat? Wasn't most of that testimony that you are objecting to by Mr. de Jesus, assuming it was hearsay evidence, covered by witnesses who had direct knowledge of that evidence later in the case? That's the problem, Your Honor. Later in the case, most of the witnesses stated that they either did not remember exactly what happened and only pinpointed that Mr. Costas was the recruiter. Well, if the record showed otherwise, what would that do to your argument? If the record showed otherwise, Your Honor, I believe the record wouldn't show otherwise. Well, I'm asking you if it did show that, because mine don't show otherwise also. Well, to my argument, Your Honor, it wouldn't do anything to it, that Mr. de Jesus was briefing and giving his testimony again, which is impermissible, because the government already had his turn to brief the jury on its opening statement. You're going to have the cake and eat it twice, Your Honor. It doesn't work that way. Why wouldn't it be harmless error if the information that he provides in his testimony is in fact testified to by the witnesses who follow him? Why isn't that harmless error? Because, Your Honor, he had no personal knowledge as to that Mr. de Jesus. Are you arguing that the jury would credit him more than it would credit the witnesses? Is that what the argument is? Yes, Your Honor, it was a credibility booster as to that, and it was adding information of the government, and it was usurpating the jury's fact finding. And what did the trial judge instruct the jury on? Nothing as to that. Did you request an instruction that no special credences to be given to government witnesses? That was given at first, Your Honor. Yes, I thought so. Yes, yes, Your Honor. But as to that matter, when the objection arised, no special instruction was given what the trial judge objected. Was one requested? No, Your Honor, no. Okay. Do you have other points you'd like to make? Oh, yes, Your Honor, we have. Here we have a problem also as to the elements of the offense. We believe that the government did not prove that Mr. Costas committed the fraudulent offense against the United States because the government never proved that there was an intent to defraud the United States per se. That is an issue that nobody could testify in court as to that. Specifically, Agent Rivera stated that he had no evidence whatsoever that Mr. Costas had done anything wrong, that he had received any monies or anything. So nobody could pinpoint that Mr. Costas, as a recruiter, was defrauding anybody, Your Honor. And that is an issue that we specifically urge this court to view. And there are no elements of fraud here. So you can't prove intent by circumstantial evidence? Your Honor, there is no... Just please answer my question. Yes, you can, Your Honor. And is there no circumstantial evidence showing the intent to defraud? No, Your Honor, there isn't. And that's a problem because you cannot put impermissible inference over impermissible inference over and over again to reach a verdict of guilt here. Well, hopefully the record will support that statement. Oh, we hope so, Your Honor. And the problem is that all the people that testified against Mr. Costas only could testify that he was recruiting them legally. They legally entered the military. Mr. Costas, there is no evidence that he received any kickbacks, any monies. Nobody testified to him against that. But that's not an element of the offense, is it? But it's a strong circumstantial evidence, Your Honor. But there is evidence that these people that he recruited, that the identity information was given to other people, that the other people received bonuses, and then one person receives a $1,000 bonus regularly, puts it in the bank, takes $500 out in cash every time. So the inference is that someone is getting that $500, and the information is coming originally from your client. That is perfectly wrong. But that's circumstantial evidence. Wouldn't a reasonable person be able to draw an inference based on that evidence? Yes, Your Honor, but not against Mr. Costas. And that is a big if. Because Mr. Costas, nobody pinpointed that Mr. Costas was receiving that money, and specifically the agent that testified as to that, Agent Rivera, and he had no evidence that the magic $500 number was being received by Costas. Yes, but the jury heard that. They heard that, and they nonetheless convicted your client based on inferences from the circumstantial evidence. I think in the end your argument devolves into the proof was insufficient that he had the intent to defraud beyond a reasonable doubt. And that is your argument. Yes, Your Honor. Okay. Mr. Lane, good morning. Good morning, Your Honor. There's something I would like you to clarify for me. Were you the trial attorney for the government? I was not involved in any way at the trial, Your Honor. Do you have any recollection as to who was your first witness? The first witness was not Agent DeJesus. He was the fifth or sixth witness. He testified about the midpoint in the trial, about the midpoint of the fourth day of the trial, as a matter of fact. Exactly who the first witness was? No, that's my question. Thank you. Could I ask you to speak more directly into the mic? Yes. Thank you. I thought I would start with the sufficiency of the evidence issue, unless the Court would like me to start elsewhere. We think that viewing the evidence in the light most favorable to the government, drawing all reasonable inferences in support of the verdict, that the evidence was sufficient to support the jury's finding of guilt on the three counts of fraud. We think that the clearest path for the jury to follow was under the aiding and abetting theory that it was instructed on. Under that theory, of course, the government had to prove that Mr. Melendez, the principal, committed the three counts of wire fraud. Very briefly, I think the evidence showed that he did so by falsely holding himself out to DocuPack. Mr. Lane, you just said Mr. Melendez, and we're dealing here with Mr. Costa. I was only mentioning Mr. Melendez, Your Honor, because an element of our... I just wanted to be sure that wasn't a non-intentional reference. Our theory is that Mr. Melendez was the principal and that Mr. Costa is guilty as an aider and abetter. So Mr. Melendez, as the principal, committed directly these three counts of fraud by falsely holding himself out to DocuPack. As the recruiting assistant for a number of recruits, as relevant here, Angel Ortiz and Jeanette Maldonado, those are the two recruits whose bonuses underlie the three counts of conviction for Mr. Costa. He did so using the DocuPack online system. He submitted their information over the interstate wires and thereby triggered bonus payments also by wire. He didn't deserve the bonus payments because not only did he not act as their recruiting assistant, he didn't know them at all. Turning to Mr. Costa, we think it's a reasonable inference from the evidence that Mr. Costa provided the information used by Mr. Melendez to trigger these bonus payments. And the key facts there are that Mr. Costa was the recruiter for these two, both Ortiz and Maldonado. Mr. Costa is the one who interacted with them in the course of the enlistment process. He is the one, they both clearly testified, who took from them their personal information, including their social security number and other private information, as part of the enlistment process. That information then ends up in Mr. Melendez's DocuPack account and is used to trigger the bonus payments. And the jury heard that Mr. Costa wasn't just the recruiter for these two recruits. He was the recruiter for every single one of the 21 bonus payments that Mr. Melendez received from DocuPack. And that includes the 13 bonus payments that the jury found to be fraudulent as to Mr. Melendez. So the fact that Mr. Costas is the common denominator in this fraud, we think, is part of what supports this inference that he provided the information. I would also add that it's clear Mr. Costas was aware of this GRAP bonus program. His former supervisor, Jose Arroyo, testified that all of the recruiters under Arroyo's supervision, including Costas, were trained on the GRAP program and received briefing materials, including the exhibit that appears at Government Exhibit 1 that was introduced to the jury that explained how the DocuPack or GRAP program worked. And Mr. Costas was therefore clearly aware that regular guardsmen like Mr. Melendez could obtain bonuses by referring recruits or pretending to refer them to Mr. Costas, as the case may be. We think that evidence all taken together would support a rational, reasonable jury verdict that Mr. Costas was guilty beyond a reasonable doubt as an aider and a better. Turning to the, and I would note again that the kickbacks are not an element of the wire fraud, so we don't think that the jury needed to find that the kickbacks, any kickback occurred in order to sustain these three convictions. On the overview testimony... You know, I would like to comment on that, because I've said it in writing before, the government has good cases and then they go in this step, causing us a lot of problems with the situation. I don't know why you keep doing it. I understand it's your prerogative to do so, but I feel I have to make this comment again. On overview testimony? Yes. And we understand the court's frustration, Your Honor. All I can say is it shouldn't have happened. Well, communicate it to somebody. I will do so, Your Honor. I would say in this case the testimony, for the most part, that Agent DeJesus did was appropriately based on his own first-hand knowledge of the investigation. When he used the words fraud, he was not describing the defendants as part of any kind of fraudulent scheme. He used the word fraud in describing how the investigation got from the Army Audit Agency to the criminal investigation phase generally, not about these specific defendants. And he used the phrase fraud indicators or indicators of fraud just to describe, not the defendants' conduct, but the facts that they would uncover in the investigation that would lead them either to follow a particular lead or not, as the case may be. So we would urge the court to take a look at the testimony. This is not a case like some of the cases the defense cites where you have an agent taking a stand. But the trial judge at some point says he comes perilously close to the line of what's permissible. Which comment was that made about? Your Honor, if I'm not mistaken, was that Agent Rivera that we're talking about? I'm not sure. I think Agent Rivera, which is a separate claim that the defense raises, that's about the kickbacks. And Agent Rivera testified that, maybe I'm confused, Your Honor, but as I recall, the judge did sustain an objection to a comment by the other case agent, Agent Rivera, who testified about the kickbacks. I think you're right, Mr. Lane. That's my recollection of the evidence. As to this particular testimony by Agent DeJesus, the later testimony of the actual enlistees here, as relevant here, that would be Ortiz and Maldonado, was consistent with Agent DeJesus' testimony. They both testified consistent with Agent DeJesus' summary that Mr. Costas had been their recruiter and that they didn't know Mr. Melendez at all. Under the circumstances, we don't think there was any risk that the jury would have viewed Agent DeJesus' testimony as boosting the credibility of these witnesses, either generally or with respect to those particular facts. That's because these aren't witnesses who have or are saddled with their own credibility issues. They're not implicated in criminal conduct and attempting to curry favor with the government through their testimony. And they're testifying about fairly simple and straightforward matters of historical fact from their own perspective. Who was your recruiter, and do you know this person named Carlos Melendez? We don't think that under the circumstances, the jury likely would have been swayed one way or the other by Agent DeJesus' hearsay description of the interviews ahead of time. And finally, I'd note that the jury acquitted Mr. Costas of most of the counts in this case, including the counts related to all the other enlistees' bonus payments. And Agent DeJesus' testimony really doesn't provide any basis for distinguishing the counts of conviction from the counts of acquittal. So we would submit that that also is an indication that there wasn't strong and insignificant prejudice resulting from his hearsay testimony. On the tolling of the statute of limitations, is the government asking us to overrule Judge Stern's opinion about the time of cessation of hostilities? We certainly wouldn't object to the court doing that, but it's not necessary to do so. Because even under the functional test that the defendant would have the court apply, it's clear that the hostilities had not ended even by the time the charges were first brought against them. So even applying that prosperity test, I think the government prevails. Okay. I have another question. Why did it take the government so long to bring these charges? It's just a pure question about the fact that, yes, your limitations period was most likely tolled, but still these events were a long time before the charges were actually brought. What is the explanation for this? The record isn't entirely clear. All I can say is they were slower to act on the signs of fraud than they should have been. So I would attribute it to negligence or sort of slow-moving government process. But in either case, the charges were timely under the statute, and we don't think we're at the point with seven years as opposed to five where due process principles would dictate dismissal of the charges. There's certainly no sign of bad faith on the government's part. Was it that nothing happened locally and there was a national push belatedly to look at fraud? The record indicates that it started with the Army Audit Agency review. To be honest, probably everyone was happy when the recruiting numbers were up and it was working. Then the Army Audit Agency noticed that this program, which had flaws, we acknowledge it and it came out in the record, might be being abused. At that point they started the investigation, but it was a few years into the program. Thank you. Happy to answer any other questions otherwise. Thank you. Thank you. As to the issues that Mr. Costas provided info to Melendez, as the government has stated, that was a permissible line that the recruiter could follow according to the GRAP rules and regulations as specifically stated in one of the exhibits that produced a trial. What was a permissible line? That you could provide identity information from a non-eligible recruiter to an eligible person to enable the eligible person to get a bonus that he didn't deserve? Your Honor, that was strictly permissible under the GRAP rules and that is stated in the National Guard pamphlet that was produced at the trial in October. Could you be more specific so I can read it? Excuse me, Your Honor. Could you refer me specifically to what document you're talking about and what page? Your Honor, I don't have it here at this moment. Send a letter to the court. Yes, Your Honor. The jury heard that argument and rejected it. Yes, Your Honor. Why should the jury be compelled to accept that argument? Because, Your Honor, as the recruiter was permitted to do so. No, no. That's your interpretation of those documents. The government had witnesses saying that that was not the proper way to read them. You argued that to the jury. The jury rejected your argument. Correct? Yes, Your Honor, it did. And that is an issue that is part of the process of the jury. We cannot get into the minds of the jury right now, Your Honor. But it's an issue that is good to look at because the GIRA program was a lead generation program. The recruiters had to work hand-in-hand with the recruiter's assistant in order to, as the government very succinctly said, boost up the numbers in production and recruitment. And everybody was happy when it happened. But it was necessary, it was a necessary mechanism in order for this program to function. Was it necessary that recruiters take home cash on the side and they put it into their personal accounts? That is an issue that was never brought in here, Your Honor. That's the problem. Well, what issue does this argument that you're making come under? Well, Your Honor, that Mr. Costas was permitted to share information with their recruiting assistant. Is this a part of your argument that he had no intent to commit a fraudulent offense scheme against the United States? And it's a lack of evidence as under 1343, Your Honor. Being permitted to share information is considerably different than being permitted to conspire to commit wire fraud. Or even a bet wire fraud. Yes, Your Honor. But that goes against the search-compensatory evidence when you're allowed to share information. So you're basically, this argument really goes to sufficiency of the evidence. Yes, Your Honor. Yes, it does. Okay. And then also, Your Honor, we have a matter here to discuss as to the exculpatory evidence as to Mr. Perales' testimony that was withheld from the defense and was only later produced after the trial of Mr. Costas. Is that the issue that was brought up on the Rule 33 motion? Yes, Your Honor. We have no appeal from the denial of the Rule 33 motion. Well, Your Honor, we brought it up on the inside of this appeal. No, no. We have no appeal from the denial of the post-trial Rule 33 motion. Isn't that so? It is, Your Honor. It is. All right. So we have no jurisdiction to consider that issue. All right, Your Honor. You can't take an appeal, have a Rule 33 denied, and then argue the Rule 33 issues. You've got to take a second appeal. Well, Your Honor, that would be an incredible waste of judicial resources. Following the rules is scarcely ever a waste of judicial resources. I understand that, Your Honor. Well, so we brought up that issue, Your Honor, as you put it. But here there is a problem that Mr. Costas was acquitted of 22 charges. And it was a very close case. And all these errors compounded together create an issue that should reverse the district court's decision, your verdict, as to that, Your Honor, because the case was really close to the edge. And these errors, even when they seem small separately, they created a situation that hindered the process of Mr. Costas. Thank you. Thank you, Your Honor. Thank you, Mr. Costas.